UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MICHOEL KHAYTIN,                              Docket No. 12-CV-4169

                        Plaintiff,

            -against-


                  -against-
STERN & STERN ESQS.

                        Defendant.
-----------------------------------------------------X


_____

**MEMORANDUM OF LAW**
_____


Respectfully Submitted,


STERN & STERN, ESQS.
Defendant Pro Se
50 Court Street, Suite 1100
Brooklyn, New York 11201
(718) 935-9458

## STATEMENT OF FACTS

The within case surrounds a rent demand that Plaintiff's landlord, Henia Hirsh caused to be served upon the Plaintiff. The Rent Demand is in the name of Henia Hirsh and was signed by David Sputz, Ms. Hirsh's property manager on behalf of Ms. Hirsh. Plaintiff is fully aware that David Sputz is employed by Henia Hirsh as he has repeatedly dealt with him about issues surrounding his tenancy, including issues surrounding the Rent Demand.

The Rent Demand contained absolutely no information that it was from anyone other than Henia Hirsh. The signatory on the Demand was David Sputz, the agent for Ms. Hirsch. The Demand in question clearly identifies this. Plaintiff had long dealt with Mr. Sputz about issues surrounding his tenancy and knew Mr. Sputz to be acting on behalf of Ms. Hirsh. After receiving the Rent Demand, e-mails were exchanged between Plaintiff and Mr. Sputz about the Rent Demand.

After the Demand went unsatisfied, Ms. Hirsh instituted summary Housing Court Proceedings against the Plaintiff. It was at this point that Defendant first identified itself as Ms. Hirsch's attorney. Defendant's only role in the nonpayment proceeding was simply to prepare legal papers and to represent the landlord in court. As detailed in the Declaration of David Lyle Stern Esq., Defendant does not involve itself in any debt collection aspects of the litigation and is not in the practice of either signing rent demands or communicating with litigants with respect to their debts outside of court.

Plaintiff thereafter brought the instant action against Defendant claiming that Defendant has violated the Fair Debt Collection Practices Act, 15 USC §1692 et seq.

Plaintiff did not raise any issues in his Answer to the summary non-payment case which was brought against him. Nonetheless, Plaintiff now seeks to maintain a lawsuit against Defendant purporting that Defendant's actions violated the Fair Debt Collection Practices Act, 95 USC 1692 et sec.

## ARGUMENT

### I. THE COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM

Pursuant to Rule 12(b)(6), the Complaint fails to state a claim for a violation of the FDCPA or any other federal statute as it is predicated upon a writing which cannot be characterized as an "initial communication" from a "debt collector" as defined by15 USC §1692 803(6) .

A dismissal under Rule 12(b) (6) is a determination that the plaintiff has failed to state a claim upon which relief may be granted. See Scott v. McCarthy, 2007 WL 1345487 (NDNY, 2007). A complaint should be dismissed if the court finds that the plaintiff's claims are barred as a matter of law. Care Environmental Corp. v. M2 Technologies, Inc., 2006 WL 148913 (EDNY, 2006).

While taking the allegations of the complaint as true, a court deciding a 12(b)(6) motion should assess the legal feasibility of the complaint and dismiss the complaint if, from the four corners, no feasible cause of action can be gleaned. See Walter v. Fischer, 391 Fed. Appx. 991, 992 (2nd Cir. 2010).

For this Court to have subject matter jurisdiction over a dispute between two or more citizens of the same state, the plaintiff's cause of action must arise under the Federal Constitution, laws, or treaties. See 28 USC 1331. An action "arises under federal law within the meaning of Section 1331 if either (1) federal law creates the cause of action or (2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. Franchise Tax Bd. V. Construction Laborers Vacation Trust, 463 US 1, 27-28

(1983). A state law claim may be treated as one "arising under" federal law only where the vindication of the state law necessarily turns on some construction of federal law. Id. At 9.

Such "federal question" must be presented on the face of a properly pleaded complaint. Caterpillar Inc. v., Williams, 482 US 386, 392 (1987). See, also, Louisville v. Nashville R. Co., v. Motley, 211 US 149, 152 (1908); Metropolitan Life Ins. v. Taylor, 481 US 58, 63 (1987); Franchise Tax Bd. Of Cal. v. Construction Laborers Vacation Trust for Southern Cal. 463 US 1, 12 (1983).

In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts resolve any doubts against federal jurisdiction. See Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1045-46 (2d Cir.1991); Lupo v. Human Affairs Int'l Inc., 28 F.3d 269, 274 (2d Cir.1994). Emriche v. Touche Ross & Co., 846F. 2d 1190, 11995 (9th Cir. 1988); Prize Frize Inc. v. Matrix Inc., 167 F. 3d 1261, 1265 (9th Cir. 1990).

In the instant case, it is undisputed that both Plaintiff and Defendant are citizens of New York. Plaintiff predicates his entitlement to federal jurisdiction solely upon the existence of alleged claims under the FDCPA arising from the Rent Demand that he received as a predicate to a landlord-tenant case currently pending in Kings County Housing Court. The crux of Plaintiff's Complaint appears to be that the Rent Demand does not contain the language mandated by the FDCPA in initial communications issued by "debt collectors" as defined under the act and that some

undisclosed "class" exists of debtors who have received "collection letters under Stern and Stern Esqs. letterhead.

## THE RENT DEMAND WHICH IS THE SUBJECT OF THIS ACTION WAS ISSUED BY A "CREDITOR" NOT A "DEBT COLLECTOR" AND, AS SUCH, IS EXEMPT FROM THE REQUIREMENTS OF THE FDCPA

Plaintiff's claim fails *ab initio* as the Rent Demand which is the only alleged predicate for Plaintiff's claim is not an "initial communication" issued by a "debt collector" as defined by 15 USC 1692(a) (6). It therefore is not subject to the Statute's terms with respect to any language which must be contained in the Notice or any procedures with respect to clarification of the debt.

`Prominently the Rent Demand herein was issued directly in the name of the creditor herself, Plaintiff's landlord, Henia Hirsh. The Notice was signed by the landlord's property manager, David Sputz on behalf of the landlord. As the annexed e-mails demonstrate, Mr. Sputz is very familiar to Plaintiff as Ms. Hirsh's manager and is actually the person who Plaintiff usually deals with respect to his tenancy. Indeed, the Rent Demand is by no means an "initial communication" that Plaintiff has had with his landlord with respect to his debt. As the e-mails demonstrate, it had been a frequent topic of their correspondence for several months prior.

The FDCPA only applies to conduct by "debt collectors". The term "debt collector" as defined by 15 USC 1692 803(6) means:

> "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . .the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . ..

The FDCPA does not generally apply to a "creditor" as defined by the Statute seeking to enforce a debt. <u>See</u> 15 USC §1692 et sec. <u>See</u>, <u>also</u>, <u>United Cos Lending v., Candela</u>, 292 AD 2d 800, 801-802 (2002), citing 15 USC 1692a (6) (f) (iii); <u>Maguire v. Citicorp. Retail Serv</u>s. 147 F3d 232, 235 (1998); <u>Wadlington v.. Credit Acceptance</u>, 76 F3d 103, 106 (1996); <u>Citibank (South Dakota) N.A. v. Sablic</u> 55 A.D.3d 651, 653, (2nd Dept., 2008); <u>U.S. Bank Nat. Assn. Mcpherson</u>, 35 Misc. 3d 1219(A) (Sup. Ct., Qns. Co., 2012); <u>Beneficial Homeowner Service Corp. v. Butler</u> 2007 WL 519276, 3 (Sup. Ct., NY Co., 2007)

A "creditor" under the FDCPA means "any person who offers or extends credit creating a debt or to whom a debt is owed". Henia Hirsh, as Plaintiff's landlord would be considered a "creditor" under15 USC 1692 803(4). The Statute also expressly excludes from the definition of a "debt collector:

> "(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

> See 15 USC 1692 803(6).

The only provision of the FDCPA  which could call a "creditor" to fall under the definition of a "debt collector" itself under the Act is15 USC 1692

803(6). This applies under the limited circumstance where they use a name other than their own to imply that a third party is collecting or attempting to collect a debt. See, Eina Rlty. V. Calixte, 178 Misc. 2d 80 (Civ. Ct, NY Co., 1998).

Plaintiff does not, and cannot, claim that, in the process of collecting her own debts, Ms. Hirsh used any name which would indicate that a third person was or was attempting to collect such debts. 15 USC §1692(a) (6). Rather Plaintiff's motion appears to misrepresent, alternatively, that Defendant typed Ms. Hirsh's name but signed the notice in its capacity as her attorneys, submitted the notice with no signature but merely Ms. Hirsh's typewritten name or sent out notices on Defendant's "letterhead". There claims are simply untrue and are not borne out by the Notice itself.

The Rent Demand at issue is in the name of Ms. Hirsh, alone. It is signed by a person known by Defendant to be Ms. Hirsh's employee. As discussed above, neither Ms. Hirsh herself nor her employee, Mr. Sputz fall within the statutory definition of a "debt collector" and any writing that Mr. Sputz signed could not be considered a communication that is subject to the requirements of the Statute.

The Rent Demand bears an actual signature rather than simply a typewritten one. The name of the signatory is clearly stated together with the name of his employer, the landlord. Defendant's name does not appear on the Rent Demand in any form of whatever nature. There is not a single mention of a law office, debt collection agency or any other third party in the Notice. The

Notice further does not reference any case file or identifier. There is no allegation that any mailing of the Notice had any reference to Defendant's office. It necessarily would not be the case. Plaintiff does not claim that he requested (or was denied) validation of the debt from Defendant. Instead, Plaintiff directly contacted his creditor for clarification of the amounts and received such clarification.

15 USC 1692 803(6). further exempts from the definition of a "debt collector":

> (D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

Thus, the actions of any process server who served the Notice would not, either immediately or vicariously, be subject to the Statute.

The Petition and Notice of Petition Nonpayment, are the only documents in the State landlord-tenant matter on which Defendant's name appears. These are not communications by "debt collectors" under the Statute. See 15 USC 1692(a) §807(11) which specifically exempts "formal pleadings in connection with a legal action"

As the Federal Trade Commission Staff Commentary on the FDCPA, published December 13, 1988, 53 Fed. Reg. 50097-50110 noted:

> "Attorneys or law firms that engage in traditional debt collection activities (sending dunning letters, making collection calls to consumers) are covered by the FDCPA, but those whose practice is limited to legal activities are not covered.
>
> (Section 803(6), Comments 1-2)

Similarly, filing or service of a complaint or other legal paper (or transmission of a notice that is a legal prerequisite to enforcement of a debt) is not a "communication" covered by the FDCPA" (Section 803(2), comment 2; section 809(a), comments 6-7)

"The FDCPA applies only to debt collectors and specifically exempts creditors themselves from the statutes' requirements". Monogram Credit Card Bank of Georgia v. Mata, 195 Misc.2d 96, 98, (N.Y.City Civ. Ct., 2002); Chiang v. Verizon New England, 595 F.3d 26 (1st Cir.2010); Norris v. Fairbanks Capital Corp., Cause Nos. 04-30932& 04-31023, 2006 WL 1169849 (holding that plaintiffs 'claims failed because defendants were not "debt collectors" under the FDCPA). Doran v. Aus, 2009 WL 123608 (9th Cir. 2009) (stating that homeowner's association which was attempting to collect its own debt was not a debt collector under the FDCPA).

Neither the individual who signed the Notice which is the subject of the is lawsuit,  nor the person on whose behalf he signed, are "debt collectors" within the meaning of the Statute, but the creditor issuing the Demand in the creditor's own name. The notice is therefore not subject to the FDCPA's requirements. U.S.C. § 1692a(6); United Companies Lending Corp. v. Candela, 292 A.D.2d 800, 801, 740 N.Y.S.2d 543 (4th Dep't 2002); Eina Realty v. Calixte, 178 Misc.2d 80, 83 (Civ. Ct., NY Co., 1998); Monogram Credit Card Bank of Georgia, supra; Maguire v. Citicorp Retail Servs., 147 F.3d supra at 235; Finlayson v. Yager, 21 Misc. 3d 1112(A) (City. Ct. Poughkeepsie, 2008).

As the court held in Monogram Credit Card Bank of Georgia supra at 98:

"The FDCPA was enacted to protect consumers by eliminating debt collectors' abusive practices. (15 USC § 1692 [e]; *Eina Realty v Calixte,* 178 Misc 2d at 83; *Romea v Heiberger & Assoc.,* 163 F3d 111, 118 [2d Cir 1998].) The FDCPA requires a debt collector to provide the consumer claimed to owe the debt written notice that if the consumer notifies the debt collector, in writing, within 30 days, that the consumer disputes all or part of the debt, the debt collector will mail verification of the debt to the consumer. (15 USC § 1692g [b].) Until the debt collector mails the verification to the consumer, the debt collector must cease collection of any disputed portion of the debt (*id.*).

These notice provisions do not apply where the creditor, rather than a debt collector, directly attempts to collect the debt. Only debt collectors are subject to the various restraints imposed by the FDCPA. (15 USC § 1692a [6]; *Eina Realty v Calixte,* 178 Misc 2d at 83, 85, 87; *Maguire v Citicorp Retail Servs. Inc.,* 147 F3d 232, 235 [2d Cir 1998].)"

Likewise, in); <u>Beneficial Homeowner Service Corp. v. Butler</u> 2007 WL 519276, 3 (Sup. Ct., NY Co., 2007), the court held that:

"The Federal Fair Debt Collection Practices Act (15 USC § 1692 et seq.) (FDCPA) was enacted to protect consumers by eliminating debt collectors' abusive practices (see 15 USC § 1692[e]; *Eina Realty v. Calixte,* 178 Misc.2d 80, 83 [1998]; *Romea v. Heiberger & Assocs.,* 163 F3d 111, 118 [1998]). Moore's claim that plaintiff violated the FDCPA is without merit, however, since it has been held that the act does not generally apply to a creditor seeking to enforce a contract, such as a mortgage or note ( *United Cos. Lending v. Candela,* 292 A.D.2d 800, 801–802 [2002], citing 15 USC § 1692a [6][F][iii]; *Maguire v. Citicorp Retail Servs.,* 147 F3d 232, 235 [1998]; *Wadlington v. Credit Acceptance,* 76 F3d 103, 106 [1996] ). In the alternative, it has been held that the notice provisions do not apply where the creditor, rather than a debt collector, directly attempts to collect the debt (Monogram *Credit Card Bank v. Mata,* 195 Misc.2d 96, 97 [2002], citing 15 USC § 1692a [6]; *Eina Realty,* 178 Misc.2d at 83, 85, 87; *Maguire,* 147 F3d at 235).

In contrast, a rent demand signed by the landlord's counsel who identified the fact that it was from an attorney's office has been found to violate the FDCPA. <u>See</u> <u>Romea v Heiberger & Assocs.</u> 998 F. Supp. 712 (SDNY, 1997)

aff'd 163 F3d 111 (2d Cir, 1998). There the three day notice was signed by Jaime Heiberger, the attorney for the landlord on behalf of the firm and clearly indicated that it was issued by a third party rather than the creditor. This situation is clearly distinguishable from that in the case at bar.

In <u>Arrey v. Beaux Arts II, LLC</u>, 101 F. Supp. 2d 225 (SDNY, 2000), the court while acknowledging the decision in <u>Romea v Heiberger & Assocs.</u> 998 F. Supp. 712 (SDNY, 1997) aff'd 163 F3d 111 (2d Cir., 1998), specifically rejected the argument that a notice prepared by an attorney but signed only by the landlord could constitute a violation of the FDCPA.

**IT WOULD VIOLATE THE ENTIRE PURPOSE AND POLICY OF THE FDCPA TO SUBJECT A NOTICE WHICH, BY ITS PLAIN TERMS IS ISSUED DIRECTLY FROM A CREDITOR, TO THE SAME REQUIREMENTS AS THOSE FROM THIRD PARTY DEBT COLLECTORS.**

To find the instant Rent Demand to be an "initial communication" issued by a "debt collector" within the meaning of the FDCPA would completely defeat the intent and purposes of the Statute.

The stated purpose of the Statute is to:

> "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged"

15 USC 1692 §802 (e).

The Statute is not designed to inhibit creditors themselves from communicating with their debtors unless they do so under the false pretense of being a third party attempting to collect the debt.

When determining whether a person or entity is a "debt collector" within the meaning of the Statute, overt representations and outward appearances are key. It is not a question of *who* may have assisted in the preparation of a writing, but the actual impression that writing, on its face, gives to its recipient. If a communication is signed by an outside third party or otherwise contains references to a third party purporting to collect a debt on behalf of another, (including attorneys engaged regularly in that practice), it may qualify as a communication issued by a "debt collector".

Indeed, even a communication from the creditor himself can be subject to the Act if the creditor "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts".  As the Second Circuit held in Maguire v. Citicorp Retail Servs., 147 F.3d 232, 235 (2nd Cir. 1998):

"To avoid FDCPA coverage, a creditor should use the "name under which it usually transacts business, or a commonly-used acronym," or "any name that it has used from the inception of the credit relation." Maguire v. Citicorp Retail Servs., 147 F.3d 232, 235 (2nd Cir. 1998) citing the Federal Trade Commission Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097,

50107 (1988); <u>Dickenson v Townside T.V. & Appliance, Inc.</u>, 770 F. Supp. 1122, 1128 (S.D.W.Va. 1990).

The Second Circuit went on to explain:

"The triggering of the FDCPA does not depend on whether a third party is in fact involved in the collection of a debt, ***but rather whether a least sophisticated consumer*** would have the false impression that a third party was collecting the debt." (emphasis added).

<u>Maguire,</u> 147 F.3d at 236 (2007). <u>See</u>, <u>also</u>, <u>Campbell v. Triad Financial Corp.</u>, 5:07-CV-579 (Dist. Ct. ND Ohio, 10/9/07)

Clearly, communications emanating directly from a creditor in the creditor's own name which do not reference any third party ***do not*** violate the Statute's stated purpose and cannot possibly mislead even "the least sophisticated consumer". <u>See</u>, <u>Maguire,</u> 147 F.3d at 236 (2007); <u>Campuzano – Burgos v. Midland Credit Mgmt., Inc</u>., 550 F,3d 294 (3rd 2008) (reasoning that settlement opportunity notices sent on the letterhead of the creditor's senior executive were not deceptive and did not violate the FDCPA).

**THE LEAST SOPHISTICATED CONSUMER COULD NOT CONCLUDE THAT THE RENT DEMAND CAME FROM ANY ONE OTHER THAN THE CREDITOR-LANDLORD.**

In evaluating potential violations of the FDCPA, the court must use an objective standard based on whether the "least sophisticated consumer" would be deceived by the collection practice. <u>See</u> <u>Maguire v. Citicorp. Retail Services</u>, 147 F 3d 232, 235 (2d Cir. 1998); <u>Clomon v. Jackso</u>n, 988 F.2d 1314, 1318 (2d Cir.1993); <u>Jeter v. Credit Bureau, Inc</u>., 760 F.2d 1168, 1172 (11th

Cir.1985). <u>See</u>, <u>generally</u>, <u>Russell v. Equifax</u>, A.R.S., 74 F.3d 30, 34 (2d. Cir. 1996);

The Second Circuit adopted the "least sophisticated consumer" test to determine whether a collection letter violates § 1692e in <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1318-1320 (2d. Cir. 1993). That case involved an attorney who allowed a collection agency to print out form letters on his letterhead giving the false impression that they were from an attorney who had reviewed the individual case, without making necessary disclosures under the FDCPA. The Second Circuit held:

> "The most widely accepted test for determining whether a collection letter violates § 1692e is an objective standard based on the "least sophisticated consumer." This standard has been widely adopted by district courts in this circuit. See, e.g., Johnson v. NCB Collection Services, 799 F.Supp. 1298, 1306 (D.Conn.1992); Rabideau v. Management Adjustment Bureau, 805 F.Supp. 1086, 1094 (W.D.N.Y.1992); Britton v. Weiss, 1989 WL 148663, at *2, 1989 U.S. Dist. LEXIS 14610, at * 6 (N.D.N.Y. Dec. 18, 1989); cf. Riveria v. MAB Collections, Inc., 682 F.Supp. 174, 178 (W.D.N.Y.1988) (using "unsophisticated consumer" standard). This standard has also been adopted by all federal appellate courts that have considered the issue. See Smith v. Transworld Systems, Inc., <u>953 F.2d 1025</u>, 1028 (6th Cir.1992); Graziano v. Harrison, <u>950 F.2d 107</u>, 111 (3d Cir.1991); Jeter v. Credit Bureau, Inc., <u>760 F.2d 1168</u>, 1174-75 (11th Cir.1985); Baker v. G.C. Services Corp., <u>677 F.2d 775</u>, 778 (9th Cir.1982).  . . .  We now adopt the least-sophisticated consumer standard for application in cases under § 1692e.

The Second Circuit examined in detail the purposes served by this standard as well as the extent of the liability that it creates.

> The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-

protection law. More than fifty years ago, the Supreme Court noted that

[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the honesty of those with whom he transacts business. Laws are made to protect the trusting as well as the suspicious. Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 116, 58 S.Ct. 113, 115, 82 L.Ed. 141 (1937) (finding encyclopedia-selling scheme in violation of Federal Trade Commission Act).

We subsequently sounded the same theme in our consumer-protection cases, holding that the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 41 et seq., was not made "'for the protection of experts, but for the public--that vast multitude which includes the ignorant, the unthinking and the credulous.' "Charles of the Ritz Distributors Corp. v. Federal Trade Commission, 143 F.2d 676, 679 (2d Cir.1944), quoting Florence Manufacturing Co. v. J.C. Dowd & Co., 178 F. 73, 75 (2d Cir.1910).

This basic principle of consumer-protection law took on its modern formulation several years later, when we held that "[i]n evaluating the tendency of language to deceive, the [Federal Trade] Commission should look not to the most sophisticated readers but rather to the least." Exposition Press, Inc. v. Federal Trade Commission, 295 F.2d 869, 872 (2d Cir.1961). In recent years, as courts have incorporated the jurisprudence of the FTC Act into their interpretations of the FDCPA, the language of Exposition Press has gradually evolved into what we now know as the least-sophisticated-consumer standard. See, e.g., Jeter, 760 F.2d at 1174-75; Baker, 677 F.2d at 778.

To serve the purposes of the consumer-protection laws, courts have attempted to articulate a standard for evaluating deceptiveness that does not rely on assumptions about the "average" or "normal" consumer. This effort is grounded, quite sensibly, in the assumption that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes.".

Likewise, in <u>Russell v. Equifax</u>, 74 F. 3d 30, 35 (1996), the Second Circuit applied the "least sophisticated consumer" standard to violations of 1692(g). <u>See</u>, <u>also</u>, <u>Savino v. Computer Credit, Inc.</u>, 164 F. 3d 81, 85 (2d. Cir., 1998); Baker v. GC Services, Corp., 677 F. 2d 775, 778 (2d. Cir., 1982).

The writing must be assessed in terms of "the impression likely to be left upon the unsophisticated consumer." <u>Maguire v. Citicorp. Retail Services</u>, supra, at 235 citing <u>Catherman v. Credit Bureau of Greater Harrisburg</u>, 634 F.Supp. 693, 695 (E.D.Pa.1986). This objective standard is designed to protect all consumers, "the gullible as well as the shrewd," while at the same time protecting debt collectors from liability for "bizarre or idiosyncratic interpretations of collection notices." <u>Maguire v. Citicorp. Retail Services</u>, supra, at 235, citing <u>Clomon</u>, 988 F.2d at 1318-20.

As the Court posited in <u>Maguire, supra</u>

"The question we must answer is whether, under the least sophisticated consumer standard, a consumer would be deceived into believing that the letter at issue was not from Citicorp, but was from an unrelated third party, Debtor Assistance, even though Citicorp and Debtor Assistance are in fact related

In the instant case, it is respectfully submitted that there is no way that anyone could interpret the instant Rent Demand as having derived from Defendant or any source other than his immediate creditor, the landlord. The plain form and language of the Demand compel this conclusion.

Indeed, in the case at bar, Plaintiff's own actions demonstrate that he was fully aware of the source of the Demand. As the annexed e-mails show, in response to the Notice, he contacted his creditor and received validation in

the form of a rent breakdown and details as to which payments were missing from his creditor.

The <u>Clomon court</u> emphasized that"

> " . . . in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness. See Rosa v. Gaynor, 784 F.Supp. 1, 3 (D.Conn.1989) (FDCPA "does not extend to every bizarre or idiosyncratic interpretation" of a collection notice but "does reach a reasonable interpretation of a notice by even the least sophisticated"). Indeed, courts have consistently applied the least-sophisticated-consumer standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices.

It would be completely unreasonable to assume that the "least sophisticated consumer," reading the four corners of the Rent Demand herein could rationally conclude that it came from any source other than his creditor-landlord much less, from an attorney's office.

One of the stated purposes of the Statute is to "even the playing field" between those who employ underhanded tactics such as misrepresenting that they have hired third parties to enforce their debts when they have not, and those who are forthright and open in seeking payment in their own name. It would defeat the entire purpose and policies behind the Statute and would chill the exercise of honest creditors' rights if they cannot issue bills and notices in their own names without court scrutiny as to whether they obtained assistance in the preparation of such bills and notices.

Notably, a creditor is only considered a "debt collector" under the Statute where he communicates under a name other than his own, ***giving the***

***impression that a third party is involved***. This applies whether or not a third party is actually involved. There are no prohibitions as to what assistance a creditor might seek in the preparations of communications sent in his own name; nor is a third party a "debt collector" who merely assists a creditor in preparing a communication which will be issued in the creditor's name if the third party does not also lend his own name to the communication.

As the instant Demand was not issued by a "debt collector" it is not subject to any provision of the FDCPA and neither Defendant nor anyone else has violated the Statute. As such, the Complaint fails to state a cause of action with respect to the Rent Demand.

Plaintiff has not alleged facts constituting any other portion of 15 USC 1692(a) §807(1) entitled "false, deceptive or misleading representations" by "debt collectors" or [15 USC 1692f] § 808. ("Unfair practices" by "debt collectors").

To the extent plaintiff attempts to claim violation of the FDCPA based upon a threat to take an action which cannot legally be taken, again Plaintiff fails to state a cause of action. As stated above, the Rent Demand was not issued by a "debt collector". Furthermore, the Rent Demand properly states that "the landlord will commence summary proceedings under the Statute" if the rent is not paid. This is the landlord's right under New York law, specifically the Real Property Actions and Proceedings Law Article 7. Thus the landlord did not threaten to take any action that she was not legally entitled to take. See, generally, Taylor v. Quall, 471 F.Supp. 1053, 1062 (C.D.C.A., 2007)

(even a defective lawsuit would not violate the FDCPA if the defect can be remedied).

Plaintiff does not meet the requirements under FRCP Rule 23(a) to bring a class action. Most prominently, Plaintiff has not met the requirements of subsections (3) and (4). His "claims or defenses" are not "typical of the defenses of the class" as he has not received a collection letter on Defendant's letterhead or indeed any collections letter from Defendant. Plaintiff further, contacted his creditor, acknowledged that he knew the source of the Demand was the creditor and had further extensive communications regarding his debt. As such, Plaintiff also does not meet subsection 4 that he will "fairly and adequately protect the interests of the class.

Finally, any rights Plaintiff might have under the FDCPA are private rights. Barasch v. Estate Information Services, LLC 2009 WL 2900261 (EDNY, 2009. Plaintiff is not entitled to assert claims on behalf of other undisclosed "non-parties" who Plaintiff believes may have received "collection letters" on Defendant's letterhead. Plaintiff has not demonstrated himself to be a member of such a class and is thus not entitled to assert a cause of action on behalf of such a class.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully request that the Complaint be dismissed for failure to state a claim upon which relief can be granted.

Respectfully Submitted,

STERN & STERN, ESQS.
Attorneys for Defendant
By David Lyle Stern (DLS 6420)
50 Court Street, Suite 1100
Brooklyn, New York 11201
(718) 935-9458