# STERN & STERN
## ATTORNEYS AT LAW
### 50 COURT STREET, SUITE 1100
### BROOKLYN, NEW YORK 11201
### (718) 935-9458

**DAVID LYLE STERN**
**LAWRENCE M. STERN**                    **PAMELA SMITH, OF COUNSEL**

September 18, 2012

Honorable Sandra L. Townes
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

                Re:    Khaytin v. Stern & Stern Esqs.

                Docket No.: 12 Civ. 4169 (SLT) (MDG)

Honorable Judge Townes:

       We are the Defendants in the above referenced matter. After reading Plaintiff's response to Defendant's request for a preliminary conference prior to moving to dismiss, we feel it necessary to interpose a brief reply to correct various misstatements by Plaintiff.

       Most prominently, Plaintiff persists in referring to a file number, to this office's stationary and to this office's alleged procedures. This claim is false. There is no reference to any file number on the Notice in question. As previously explained, the Notice was signed only by the client, contains no

reference to any law office or office file and was served by an independent process server who is not affiliated with this office.

The cases to which Plaintiff cites in opposition to our motion are distinguishable from, and inapplicable to, the instant case. The holdings of such cases have further been misinterpreted by Plaintiff.

Romea v. Heiberger & Associates, 163 F. 3d 111 (2nd Cir. 1998) involved a rent demand that was **signed by the landlord's lawyer** and was clearly from a law office on behalf of the client. The notice on its face indicated that it was coming from a third party on behalf of a creditor As this basic tenet was not disputed, the argument focused upon whether or not Heiberger and Associates could be considered "debt collectors" under the Act. The Court did not address whether it would have been a different outcome if the rent demand had not made it clear **on its face** that it was issued by an attorney from an attorney's office.

Contrary to Plaintiff's representation, there is no indication that the landlord alone signed the three day notices in Sibersky v. Borah, Goldstein, Altschuler & Schwartz v. Sibersky, 2000 WL 1448635 (SDNY, 2000) or that the notices did not indicate on their face that they emanated from a law office. Indeed, the notices contained the Defendant's internal file numbers and law office abbreviations and were not properly signed by the landlord. The name of the landlord was merely printed on the bottom, with no physical signature of a human representative of the landlord. The court **did** take into account these facts and found that these anomalies and additions rendered the notice, at the very least, ambiguous. The main focus of the parties' arguments was again whether the law firm could qualify as "debt collectors". There is no indication that the court would even have entertained this issue had the notice been clearly and unequivocally from the landlord alone.

A Court should not even reach the issue of whether or not the issuer of the notice is a "debt collector" unless the notice, on its face, appears to have been issued by a third party other than the creditor himself, or it's at least ambiguous as to that issue

Dowling v. Kucker Kraus & Bruh, LLP, 2005 WL 1337442 (SDNY, 2005) involved a rent demand which contained the law firm's file number. The tenants asked the landlord's agent whether she had signed the notice and she denied knowledge. The tenants went on to contact the landlord's attorneys who were already familiar to them from prior matters. The court took into account the facts that the file number related to the attorney's file and this, combined with the tenant's prior familiarity with the attorneys could have reasonably led those particular tenants, one of whom was an attorney and the other a prominent journalist, to conclude that the notice came from a law office. It is also respectfully submitted that in that case, the district court judge incorrectly applied a subjective standard based upon the particular

knowledge of those tenants rather than the "least sophisticated consumer" standard which has been applied by the Second Circuit in every other situation and which Plaintiff acknowledges is the appropriate standard.

      Plaintiff then cavalierly quotes from Goldstein v. Hutton et al, 39 F.Supp. 394 (SDNY, 1999) without taking account the context of its specific facts. In that case, while the landlord's agent signed the notice, the notice was on the letter head of a third party management company who was a stranger to the tenant and was further contained in the envelope of another third party law firm who had also put their address on the certified mailing receipt. Under those specific circumstances, the court held that the fact that the landlord had actually signed the notice was not enough to automatically exempt it as a "communication from a debt collector" under the FDCPA. Again, the district court took notice of all these additional facts which distinguished it from being a notice which clearly on its face came from the creditor alone.

      In contrast, the instant Notice does not contain any file number or internal abbreviation and is clearly and unequivocally signed by David Sputz, the person known to Plaintiff to be the landlord's manager. It is not on the letterhead of a third party and did not arrive in an envelope from a law firm. Plaintiff misrepresents in its papers that there is a file number and an attorney's signature but a simple viewing of the Notice will reveal that this is not the case. Plaintiff's argument appears to be that because he has put blatant misstatements in its Complaint with respect to his description of the Notice which are not borne out by a reading of the actual document at issue, he has somehow stated a cause of action.

      While Plaintiff cannot point to a single precedent where an attorney was held liable for having merely contributed to the preparation of a notice issued solely by the creditor, Courts have repeatedly and consistently held that the mere act of printing and disseminating communications in the creditor's or another's name does not implicate the FDCPA. See, e.g., Aquino v. Credit Control Servs., 4 F.Supp.2d 927 (N.D.Cal.1998)( Laubach v. Arrow Serv. Bureau, Inc., 987 F.Supp. 625 (N.D.Ill.1997)(conduct of defendant that printed and mailed collection letters for a collection agency did not constitute debt collection for purposes of the FDCPA); Trull v. Lason Sys., Inc., 982 F.Supp. 600 (ND Ill.1997); Powell. Computer Credit, Inc. 975 F.Supp. 1034 (SDOH, 1997).

      As the Court in Powell, supra held, when faced with similar attempts to focus on the preparer of the notice rather than its contents:

The cases to which Plaintiff cites in opposition to our motion are distinguishable from, and inapplicable to, the instant case. The holdings of such cases have further been misinterpreted by Plaintiff.

Romea v. Heiberger & Associates, 163 F. 3d 111 (2nd Cir. 1998) involved a rent demand that was **signed by the landlord's lawyer** and was clearly from a law office on behalf of the client. The notice on its face indicated that it was coming from a third party on behalf of a creditor As this basic tenet was not disputed, the argument focused upon whether or not Heiberger and Associates could be considered "debt collectors" under the Act. The Court did not address whether it would have been a different outcome if the rent demand had not made it clear **on its face** that it was issued by an attorney from an attorney's office.

Contrary to Plaintiff's representation, there is no indication that the landlord alone signed the three day notices in Sibersky v. Borah, Goldstein, Altschuler & Schwartz v. Sibersky, 2000 WL 1448635 (SDNY, 2000) or that the notices did not indicate on their face that they emanated from a law office. Indeed, the notices contained the Defendant's internal file numbers and law office abbreviations and were not properly signed by the landlord. The name of the landlord was merely printed on the bottom, with no physical signature of a human representative of the landlord. The court **did** take into account these facts and found that these anomalies and additions rendered the notice, at the very least, ambiguous. The main focus of the parties' arguments was again whether the law firm could qualify as "debt collectors". There is no indication that the court would even have entertained this issue had the notice been clearly and unequivocally from the landlord alone.

A Court should not even reach the issue of whether or not the issuer of the notice is a "debt collector" unless the notice, on its face, appears to have been issued by a third party other than the creditor himself, or it's at least ambiguous as to that issue

Dowling v. Kucker Kraus & Bruh, LLP, 2005 WL 1337442 (SDNY, 2005) involved a rent demand which contained the law firm's file number. The tenants asked the landlord's agent whether she had signed the notice and she denied knowledge.  The tenants went on to contact the landlord's attorneys who were already familiar to them from prior matters. The court took into account the facts that the file number related to the attorney's file and this, combined with the tenant's prior familiarity with the attorneys could have reasonably led those particular tenants, one of whom was an attorney and the other a prominent journalist, to conclude that the notice came from a law office.  It is also respectfully submitted that in that case, the district court judge incorrectly applied a subjective standard based upon the particular knowledge of those tenants rather than the "least sophisticated consumer" standard which has been applied by the Second Circuit in every other situation and which Plaintiff acknowledges is the appropriate standard.

> "The Court agrees with the Defendant's conclusion — the Computer Gram is a communication from Mercy Medical Center and not the Defendant
>
> . . .
>
> The Computer Gram was sent in a plain white business size envelope . . . . Undisputed evidence presented to the Court indicates that the above letter is a communication from Mercy Medical Center, and therefore, is not subject to the FDCPA, which does not apply to creditors who attempt to collect their own debts in their own name. 15 U.S.C. § 1692a (6). First, the return address and telephone number clearly indicate that the communication was from Mercy Medical Center. Second, the text of the letter itself first thanks the recipient for choosing Mercy Medical Center, and invites the recipient to telephone Mercy Hospital regarding the unpaid bill"
>
> . . .
>
> Plaintiff points out that the Computer Gram was printed by the Defendant on the Defendant's stationery, and that the Computer Gram was mailed by the Defendant. Because of this printing and mailing, the Plaintiff argues that the Computer Gram is subject to the FDCPA as a communication from a debt collector. The Court finds, however . . . that the Computer Gram of May 18, 1995, is not a communication from a debt collector"

Id. At 1041-1042

In a similar vein, the court in <u>Trull</u>, supra, which involved a Notice issued in the name of a third party debt collector who had properly identified itself as such, reasoned that:

> "no reasonable juror (or even an unsophisticated consumer) would form the impression that the February 9 letter is from Lason or that Lason is driving the debt collection attempt. The letter clearly identifies Arrow as both a collection agency and the sender: Arrow's address, telephone number, and contact person — Marty Pryor, identified in the January 19 letter as an Arrow employee — are prominently displayed. In contrast, Lason's name is relegated to the upper corner of the letter and is not accompanied by a phone number, address, or contact person. Moreover, neither Arrow's letter preceding nor its letter following the February 9 Priority-Gram makes any reference to Lason, and both letters unequivocally state that they are attempts by Arrow to collect Trull's retail debt. These are precisely the facts that both the *Powell* and *Fratto* courts found compelling in determining that the

printer/mailer was not a debt collector. See Powell, 975 F.Supp. 1034, 1039-41 (S.D.Ohio 1997) (Fratto, 1996 WL 554549, *3 (N.D.Ill. Sept.25, 1996)

(While Trull may not have been able to tell from the February 9 letter that Lason is a printing/mailing service, the string of communications she received from Arrow do not leave any room to believe that Lason is trying to collect Trull's debt. Accordingly, she cannot withstand summary judgment on this ground".

The Second Circuit again in Gutierrez v. At&T Broadband, LLC Communications And Cable Of Chicago, Inc., 382 F.3d 725 (7th Cir. 2004) held:

" . . . the plaintiffs' monthly bills provided consistent information both before and after the plaintiffs fell into arrears, it makes no sense to assert that a post office box and/or a name considered benign prior to the billing dispute takes on new meaning after the dispute; that the new meaning to be imputed is that a third party has been interjected into the process where none was suspected before

. . .

there is no evidence of any intimidation occurring here — Rydel attached no significance to the Denver, Colorado address on his bill . . . and both plaintiffs admit that they believed they were dealing with AT&T throughout the events leading to this lawsuit. Thus, even if we decide, which we do not, that Corporate Broadband designed, compiled, and furnished the bills, no rational trier of fact could find that Corporate Broadband did so knowing that the bills would be used to deceive plaintiffs into believing that another entity, and not their cable service provider, was attempting to collect their debt, as required by the plain language of the Act. See 15 U.S.C. § 1692j".

In the case at bar, the Rent Demand was clearly from Henia Hirsh, the creditor and signed on the creditor's behalf by her employee, David Sputz with whom Plaintiff frequently dealt. It is evident that Plaintiff was fully aware of these facts because he proceeded to contact Mr. Sputz and discuss his debt in detail with him. The Notice did not misinform or mislead Plaintiff. It stated the full consequences of Plaintiff's failure to act and the creditor's intent to commence summary proceedings which was borne out by the creditor's later actions. No rational interpretation of the Notice could result in anything other than the conclusion that it emanated from the creditor – Henia Hirsh.

      For the foregoing reasons, Defendants respectfully request permission to interpose a motion to dismiss this action under FRCP Rule 12(b) based upon failure to state a cause of action.

Very truly yours,

David Lyle Stern   (6420)

cc: Maxim Maximov
    1600 Avenue M, Second Floor
    Brooklyn, NY 11230